UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald "Boo" COLVIN, Defendant–
Appellant.

No. 99–35269.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1999

Filed March 1, 2000

Allison Mendel, Mendel & Associates, Anchorage, Alaska, for the defendant-appellant.

Stephan A. Collins, Assistant United States Attorney, Anchorage, Alaska, for the plaintiff-appellee.

Before: RYMER, HAWKINS and McKEOWN, Circuit Judges.

Opinion by Judge HAKWINS; Dissent by Judge RYMER.

HAWKINS, Circuit Judge:

We must decide when the "judgment of conviction becomes final" for purposes of the statute of limitations under 28 U.S.C. § 2255 [1] where this court partially affirms and partially reverses a conviction and remands to the district court with instructions to amend the judgment. The court below held that the judgment of conviction becomes final either when the district court receives this court's mandate or when the date has passed for appealing this court's decision to the Supreme Court. We disagree and hold to the traditional view that a judgment becomes final when the time has passed for appealing the district court's entry of the judgment, in this case an amended judgment.

### Facts and Procedural Background

On April 27, 1995, Ronald "Boo" Colvin was convicted of one count of conspiracy to distribute cocaine and three counts (counts 2, 8, and 9) of aiding and abetting in the distribution of cocaine. He was sentenced to 162 months in prison and ordered to pay a special assessment of $200.00. On direct appeal, we affirmed Colvin's conspiracy conviction and two of his three convictions for aiding and abetting, but reversed his conviction on count 9. See United States v. Colvin, No. 95-30132, 1997 WL 66181 (9th Cir. June 17, 1997) (unpublished disposition). We also affirmed Colvin's sentence because his base offense level remained unchanged. We then remanded to the district court "with directions to strike the

conviction on count 9 and to reduce the special assessment from $200.00 to $150.00." Id. at *2.

Our mandate was issued July 29, 1997, and was received in the district court August 4, 1997. Soon after, the district court notified the parties of the mandate, stating that it did not appear further proceedings were necessary given the mandate's specificity, but offering the parties an opportunity to show cause why an amended judgment should not be entered. Colvin filed a response, arguing that the court had discretion to resentence him as a result of the reversal of count 9. He pointed out that with the conviction on count 9, he fell at the top of the range for a base offense level of 34, while without the conviction, he fell near the bottom of the range for that offense level. The district court considered, but ultimately rejected, this argument, finding that it had no authority under the mandate to rethink the sentence. It then amended Colvin's judgement of conviction, striking count 9 and reducing the special assessment from $200 to $150. The amended judgment was filed October 16, 1997.

On October 5, 1998, Colvin filed a section 2255 petition alleging ineffective assistance of counsel at trial and prosecutorial misconduct. The government moved for summary dismissal on the ground that the petition was time-barred under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2255, which requires that habeas petitions be filed within one year of "the date on which the judgment of conviction becomes final."

---

1. Section 2255 provides in part:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant

was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Colvin argued that his judgment of conviction did not become final until October 16, 1997, the date on which the amended judgment was entered. The district court rejected this argument, holding that entry of the amended judgment could not be used as the date the conviction became final because the mandate left nothing to the discretion of the district court. Instead, the court ruled, the judgment of conviction became final either when the mandate was received on August 4, 1997 or when the date had passed for appealing our decision to the Supreme Court, which was September 15, 1997. Because Colvin did not file his petition until October 5, 1998—more than one year after either date—the court granted the government's motion for summary dismissal.

■ Colvin filed a notice of appeal and requested a certificate of appealability, which the district court issued. We review de novo the district court's interpretation of a statute. *See United States v. Frega,* 179 F.3d 793, 802 n. 6 (9th Cir.1999).

### Analysis

Section 2255 provides that the one-year statute of limitations for habeas corpus petitions shall begin to run from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255. The statute does not define when the judgment of conviction becomes "final," and the issue is one of first impression in this circuit. The Seventh, Third, and Tenth Circuits have ruled on the matter in a related context, but they have reached conflicting conclusions.

In *Gendron v. United States,* 154 F.3d 672 (7th Cir.1998), the Seventh Circuit held that if a defendant chooses not to file a petition for a writ of certiorari, the judgment of conviction becomes final when the appellate court issues its mandate affirming the conviction. The court reached this

conclusion by comparing section 2255, which governs petitions filed by federal inmates, with 28 U.S.C. § 2244, which governs state inmates' petitions. Section 2244 provides that the limitations period begins to run from "the date on which the judgment became final *by the conclusion of direct review or the expiration of time for seeking such review*" (emphasis added), while section 2255 states only that the period begins to run from "the date on which the judgment of conviction becomes final." Because section 2255 does not mention the "expiration of time for seeking such review," the court reasoned that Congress intended for the limitations period to begin upon the issuance of the appellate court's mandate, at least where the defendant does not petition for a writ of certiorari. *See id.* at 674.[2]

The Third Circuit reached the opposite conclusion in *Kapral v. United States,* 166 F.3d 565 (3d Cir.1999). It interpreted the word "final" to mean a decision on direct review "from which no appeal or writ of error can be taken." *Id.* at 570. And because an appellate court's decision is subject to appeal, the court held that the judgment of conviction does not become final until the Supreme Court acts on a petition for a writ of certiorari or until the 90–day period for filing such a petition has passed. *See id.* at 577. The court pointed out that its interpretation is consistent with the Supreme Court's use of the term "final" in the retroactivity context. *See id.* at 571–73 (citing *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). It also noted that its interpretation would allow defendants to exhaust the possibility of direct review before turning their attention to collateral attacks. *See id.* at 570. The Tenth Circuit recently adopted the Third Circuit's approach in *United States v. Burch,* 202 F.3d 1274 (10th Cir.2000).

**2.** The court did not decide when the judgment of conviction becomes final in a case where the defendant petitions for a writ of certiorari. Presumably, however, the court would hold that the judgment does not become final until the Supreme Court either denies the petition or until the Court's resolution of the case is acted upon by the lower courts. It would defy logic to hold that a judgment is final while an appeal is pending before the Supreme Court.

■ None of these three decisions dealt with the precise issue before us. In each of those cases, the appellate court had affirmed the defendant's conviction and sentence, and the question was whether the limitations period began to run before or after the time passed for appealing to the Supreme Court. In this case, we affirmed three of Colvin's convictions, but reversed a fourth conviction and remanded to the district court with instructions to amend the judgment. The question, therefore, is what effect our remand to the district court had on the finality of Colvin's judgment of conviction.

The government conceded at oral argument that in the usual case of a reversal and remand, the judgment of conviction would not become final until after the district court had acted on the appellate court's mandate. This is because the district court's decision on remand would be subject to appeal. The government argues that this case is different, however, because we affirmed Colvin's sentence and all but one of his convictions and remanded to the district court only for the purpose of modifying the judgment. The government argues that the district court's task was strictly ministerial and that Colvin could not have appealed the district court's entry of the amended judgment. Therefore, it maintains, the judgment of conviction became final, at the latest, when the time passed for appealing this court's decision to the Supreme Court.

■ We agree with the government that the key inquiry is whether the district court's entry of the amended judgment could have been appealed. The Supreme Court has defined a final judgment in the retroactivity context as one where the "availability of appeal [has been] exhausted," *Griffith*, 479 U.S. at 321 n. 6, 107 S.Ct.

708, and we think it clear that a judgment cannot be considered final as long as a defendant may appeal either the conviction or sentence.[3]

We disagree, however, with the government's assertion that Colvin could not have appealed the entry of the amended judgment. The government bases this claim on its conclusion that our mandate did not leave any matters for the district court to decide. The problem with this reasoning, though, is that it answers the finality question by presupposing the merits of an appeal on the scope of the district court's authority on remand. In fact, our remand orders, even when phrased in categorical, final terms, sometimes do leave matters for the district court to decide. And because it's often not clear at the time a mandate is issued whether that mandate leaves matters open for the district court, we cannot say that the district court's amended judgment was not appealable. At the very least, Colvin could have appealed the district court's determination of whether the mandate left it any discretion.

We allowed just such an appeal in *Nguyen v. United States*, 792 F.2d 1500 (9th Cir.1986). In *Nguyen*, we had remanded to the district court with specific instructions to enter summary judgment in favor of the government. On remand, the district court did not grant summary judgment in favor of the government, but instead allowed the plaintiff to amend his complaint to add two new claims. The district court then granted summary judgment in favor of the plaintiff on those claims, and the government appealed, arguing that the district court had acted outside the scope of our mandate. We not only heard the government's appeal, but ruled that our earlier mandate did not preclude the district court from considering the plaintiff's amendments. *See id.* at 1502–03.[4]

---

**3.** Federal Rule of Criminal Procedure 32(d)(1) provides that a judgment of conviction must include both the adjudication of guilt *and* the sentence.

**4.** We did hold that the district court erred by not granting summary judgment to the gov-

ernment *before* considering the amendments. We found that "entry of summary judgment might have affected the court's decision to grant leave to amend." *See Nguyen*, 792 F.2d at 1503. But this finding does not undermine the point that *Nguyen* establishes, which is

■ Our decision in *Nguyen* is important in two respects. First, it makes clear that a district court's interpretation of the mandate is subject to appeal, meaning that Colvin could have appealed the amended judgment in this case.[5] Second, it demonstrates that the question of whether a district court has discretion to act on remand is not always as clear as it may seem. The district court decided in this case that it lacked discretion to rethink Colvin's sentence, and that determination may or may not have been correct. We need not decide.[6] Our point is only that the district court's interpretation of the mandate was not beyond challenge and that it was subject to appeal. Colvin did not appeal the amended judgment, but he could have. And for that reason, his judgment of conviction did not become final until the time for appealing the amended judgment had passed.

■ Our conclusion today does not affect those cases in which we affirm the judgment of conviction and sentence in its entirety and do not expressly remand to the district court. We express no opinion

as to when the statute of limitations begins to run in those cases, and we leave for another day our decision on the issue presented by *Gendron, Kapral,* and *Burch.* Our holding is limited only to those cases in which we either partially or wholly reverse a defendant's conviction or sentence, or both, and expressly remand to the district court. In those cases, the judgment does not become final, and the statute of limitations does not begin to run, until the district court has entered an amended judgment and the time for appealing that judgment has passed.

We think this clear, easy-to-follow rule is consistent with the Supreme Court's definition of finality in *Griffith.* We also think it offers several distinct advantages. First, it ensures that the determination of whether a judgment is final will not turn on an assessment of whether our mandate leaves matters open to the district court. A defendant will not have to speculate about whether our mandate affects the finality of the judgment. If we reverse any portion of a defendant's conviction or sentence and remand to the district court,

that a party may appeal a district court's interpretation of a mandate.

5. Of course, the district court's interpretation of a mandate is subject to appeal only when we have partially or wholly reversed the decision below and have expressly remanded the case to the district court. The dissent suggests that our rule would logically apply even in cases where we affirm the decision below in its entirety, since in every case there is at least a remand for the purpose of spreading the mandate. *See* Dissent at 1227. But in cases where we affirm completely, the district court never has any discretion to act outside its ministerial duty. In cases in which we reverse and expressly remand, however, the district court sometimes does have discretion to perform more than ministerial functions. Therefore, it makes sense to allow appeals in those cases, since there may be a legitimate disagreement about what discretion the district court retains.

6. We do note, however, that *Nguyen* casts some doubt on the dissent's conclusion that the district court did not have discretion to rethink Colvin's sentence on remand. In *Nguyen,* we stated that "although the mandate of an appellate court forecloses the lower

court from reconsidering matters determined in the appellate court, it 'leaves to the district court any issue not expressly or impliedly disposed of on appeal.'" 792 F.2d at 1502 (quoting *Stevens v. F/V Bonnie Doon,* 731 F.2d 1433, 1435 (9th Cir.1984)). We then found that even though the mandate specifically instructed the district court to enter summary judgment in favor of the government, it did not "expressly address the possibility of amendment, nor was there indication of a clear intent to deny amendment...." *Id.* at 1503. Therefore, we concluded, the mandate did not preclude the district court from considering amendments.

In Colvin's case, our mandate instructed the district court to "strike the conviction on count 9 and to reduce the special assessment from $200 to $150." We also affirmed Colvin's sentence because we found that striking the conviction would not affect his base offense level. But we did "not expressly or impliedly" prohibit the district court from rethinking Colvin's sentence in light of our decision to strike count 9. And, as Colvin argues, the absence of that count could have influenced the district court's original sentence.

a defendant will know that the judgment of conviction does not become final until the district court has acted on remand and the time has passed for appealing the district court's action.

Second, our bright-line rule will serve to avoid litigation over the finality question and to achieve one of the purposes of a statute of limitations, which is to clearly define the time period in which suit must be commenced.

Third, our rule will allow defendants to exhaust their appeals on direct review before bringing collateral attacks. Under the government's approach, a defendant would be required to speculate about the scope of our mandate in order to determine whether his judgment of conviction was final. And if the defendant were unsure whether his judgment was final, he would have to pursue direct relief and habeas relief at the same time. This not only would unduly burden some defendants, but would run counter to our holding in *Feldman v. Henman*, 815 F.2d 1318, 1320–21 (9th Cir.1987), that a district court lacks authority to entertain a habeas corpus petition while direct review is pending. Our approach avoids this problem by providing a clear indication of when a judgment becomes final. Under our rule, a defendant will have no doubt when the judgment becomes final and will be able to coordinate his direct and collateral appeals accordingly.

Because Colvin's judgment of conviction did not become final until the time passed for appealing the district court's entry of amended judgment, we conclude that the district court erred in dismissing his habeas corpus petition. The dismissal is therefore REVERSED and the case is REMANDED.

RYMER, Circuit Judge, dissenting:

Because this court affirmed all that was left of Colvin's case—his conviction on counts 1, 2 and 8 as well as his sentence on these counts—and our mandate left nothing for the district court to do but perform the ministerial task of erasing the conviction on count 9, I believe that the judgment of conviction became final, at the latest, when the time for petitioning the United States Supreme Court for a writ of certiorari had expired.

For sure, we reversed Colvin's conviction on count 9. But we *affirmed* both the adjudication of guilt *and* the sentence on counts 1, 2 and 8. Therefore, Colvin could only have undone his sentence by petitioning for a writ of certiorari from our decision—which he did not do. The fact that he asked the district court on remand to reconsider his sentence in light of our reversal of the conviction on count 9 should not matter, for the district court could not possibly have done so since we had already affirmed the sentence. Nor should it matter that any party can always ask anything of the district court on remand: in this case, the only conceivable thing that Colvin could request would amount to another way of saying that his sentence should not have been affirmed on appeal, but rather should have been vacated and the matter remanded for resentencing. However, we decided otherwise, and the district court had no power to "rethink" or reverse our decision. Only the Supreme Court can do that.

It is well-settled that the mandate of an appellate court " 'is controlling as to matters within its compass.' " *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir.1986) (quoting *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). Indeed, it *forecloses* the district court from reconsidering matters determined in the appellate court. *Id.* at 1502.[1] Since our mandate affirmed the

---

1. The majority's reliance on *Nguyen* for the proposition that a party may (always) appeal a district court's interpretation of a mandate is misplaced in that the district court there was asked by the plaintiffs on remand for leave to amend the pleadings to add a different theory—something that had not explicitly been ruled on appeal. Here, of course, Colvin's sentence had explicitly been ruled on, and affirmed.

sentence, the sentence could not be reexamined on remand (anymore than the convictions could be). *See, e.g., United States v. Scrivner,* 189 F.3d 825, 828 (9th Cir. 1999) (decision on direct appeal "is binding"); *Odom v. United States,* 455 F.2d 159, 160 (9th Cir.1972) (when issue was decided on direct review "the judgment became final" and the matter decided cannot be litigated again on a § 2255 motion).

Lest there be any doubt, our mandate was explicit: "We affirm Colvin's sentence and remand to the district court with directions to strike the conviction on count 9 and to reduce the special assessment from $200.00 to $150.00." Given that the mandate affirmed Colvin's sentence, there can be no question that "rethinking" the sentence was foreclosed and Colvin's judgment of conviction was fully adjudicated when we rendered our decision without certiorari having been granted.

In this respect this may be an unusual case, for more typically when we reverse a conviction or sentence, partially or otherwise, we remand for retrial, resentencing or both. In such cases, where there is an "issue [that has] not expressly or impliedly [been] disposed of on appeal," *Nguyen,* 792 F.2d at 1502 (quoting *Stevens v. F/V Bonnie Doon,* 731 F.2d 1433, 1435 (9th Cir. 1984)), the judgment of conviction will not become final until an amended judgment is entered and appellate review of the amended judgment is exhausted.[2]

The majority extends this rule for issues that are not covered by an appellate mandate to ones that are. Although there is a certain value in making the rule for the more usual case a bright line rule for each case where this court "partially" affirms and "partially" reverses a conviction and remands, I cannot agree that it is apposite here. Section 2255 focuses on when the judgment becomes *final,* not on whether it is affirmed, partially affirmed and partially

reversed, or reversed. The majority's view (that the district court's interpretation of the mandate is always appealable) would logically require the same rule to be applied in all cases, including those where the appellate court affirms the entire judgment of conviction, since in every case there is a remand at least for the purpose of spreading the mandate. So far as I am aware, no one has suggested that finality should be measured from the time a mandate to affirm is filed and spread. As a practical matter that is what the judgment on appeal did in this case. There is no basis for crafting a different rule simply because the district court was directed to perform the ministerial task of striking a conviction on one count from the judgment.

Thus as I see it, regardless of the fact that we "partially" reversed Colvin's conviction by ordering one count stricken, we affirmed his conviction *and* sentence on the only remaining counts. This necessarily means that the judgment of conviction became final in Colvin's case no later than September 17, 1997, when the time for seeking review in the Supreme Court elapsed. *See* S.Ct. Rule 13(1). I would, accordingly, hold that Colvin's § 2255 motion, which was filed more than a year later, is time-barred and was properly dismissed.

---

2. *United States v. Washington,* 172 F.3d 1116 (9th Cir.1999), is a good example. There, we vacated the sentence, then remanded with directions to recalculate the guideline range without considering a particular cross-reference and to "resentence accordingly." In

that circumstance, we held that our mandate allowed the district court discretion on remand to put together a new sentencing package. But the mandate in this case left no such room.