The PEOPLE of the State of Colorado,
Petitioner–Appellee,

In the Interest of R.A.S.,
Juvenile–Appellant.

No. 03CA1209.

Colorado Court of Appeals,
Div. IV.

June 17, 2004.

Rehearing Denied March 17, 2005.

Ken Salazar, Attorney General, Jess A. Redman, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee.

David S. Kaplan, Colorado State Public Defender, John L. Burkey, Deputy State Public Defender, Denver, Colorado, for Juvenile–Appellant.

Opinion by Judge ROY.

R.A.S., a juvenile, appeals the judgment of delinquency entered upon the trial court's finding that he committed acts which, if committed by an adult, would constitute the offense of sexual assault on a child. We reverse and remand for a new trial.

A delinquency petition was filed based on allegations that the juvenile touched the genitals of a four-year-old boy (the victim) and persuaded the victim to perform oral sex upon him.

Prior to trial, the People filed a notice of intent to introduce hearsay statements of the victim pursuant to the statute governing the admission of out-of-court statements made by child sexual abuse victims, § 13–25–129, C.R.S.2003. The trial court deferred ruling on the motion until trial.

At trial, the victim's mother testified that, on the night in question, she walked into her living room and heard the juvenile pulling up his nylon pants. The victim, who was seated on the floor in front of the juvenile, told his mother, "[H]e had me suck his pee pee." According to the victim's mother, the juvenile accused the victim of lying, thus prompting the victim to state, "No, I'm not lying. He's lying."

The next day, the victim's mother took the boy to see his grandmother and told her that the victim had "something to tell" her. When the grandmother asked the victim what he had to say, the victim stated that the juvenile "made me lick his pee pee."

At trial, the People asked to call the victim to the stand so that the court could make a determination of his competency as a witness. However, after a bench conference (which is not part of the record on appeal), the People called a police investigator to testify instead. The victim did not testify.

The investigator testified that, three days after the alleged incident, he conducted a videotaped "forensic interview" of the victim at a facility for abused children. In the videotaped interview, which was introduced into evidence, the victim told the investigator that the juvenile "made" him "suck" and "lick[]" his "pee pee" and that the juvenile had touched the victim's own "pee pee."

At the conclusion of the evidence, the juvenile urged the court to exclude the victim's hearsay statements, arguing that the statements were unreliable and that admitting them would violate the juvenile's "constitutional rights and his right to cross-examine his accuser."

The trial court ruled the victim's statements were admissible pursuant to § 13–25–129 because the statements were reliable and corroborated by other evidence. The prosecutor asked the court to clarify its ruling and indicate whether the court had determined that the victim was unavailable. The court replied: "No, I don't know that I am.... I'm ruling that you've chosen not to call him." After a brief recess, the prosecutor stated that he and the juvenile's counsel were in agreement that the victim "does not meet the requirement of the statute." The juvenile's counsel verified the representation, informing the court he would "stipulate to that." Although neither attorney specified the statute which was the subject of their stipulation, it is evident from the context of the remarks that the parties agreed the victim was not competent to testify pursuant to § 13–90–106(1)(b), C.R.S.2003.

The trial court found, based on the hearsay testimony and hearsay statements contained in the videotaped interview, that the People had proved the juvenile committed the alleged acts beyond a reasonable doubt.

I.

■ The juvenile first asserts the admission into evidence of the videotape of the investigating officer's "forensic interview" of the victim violated his Sixth Amendment right of confrontation. We agree.

While this appeal was pending, the United States Supreme Court announced its decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We ordered supplemental briefs on the implications, if any, of that case on the resolution of the issues before us. *See Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)(any "new rule" of constitutional procedure for the conduct of criminal prosecutions is to be applied retroactively to all criminal cases pending on direct review or not yet final); *A.C. v. People,* 16 P.3d 240, 242 (Colo.2001)(the United States Supreme Court has determined that despite the similarities of juvenile proceedings to civil proceedings, due process requires that courts make certain protections offered to adult criminal defendants available to alleged juvenile offenders, including the Sixth Amendment right of confrontation).

In *Crawford,* which the Supreme Court characterized as a "run of the mill assault prosecution," the defendant stabbed a man who he believed had attempted to rape his wife. The wife witnessed the stabbing, but was unavailable as a witness at trial because of spousal privilege. The prosecution offered the transcript of the wife's pretrial statement to police, which did not support her husband's claim of self-defense.

In reversing the conviction, the Supreme Court overruled *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), discarding the "adequate indicia of reliability" test insofar as it applied to "testimonial" hearsay statements and holding that the only indicium of reliability recognized by the Framers was cross-examination. The court held that "testimonial" hearsay statements are admissible only if (1) the declarant is unavailable to testify and (2) the defendant had a previous opportunity to cross-examine the declarant.

The Supreme Court's analysis centered on the history of pre-Constitution investigation and prosecution practices used by, or in, the courts. In England, the courts conducted pretrial examinations of witnesses, and the statements made at these examinations were used as evidence at trial. In the colonies, British Governors issued commissions for the ex parte examination of witnesses for use at trial. As a reaction to these practices, some of the early state constitutions contained a right of confrontation. The Court stated:

> This history supports two inferences about the meaning of the Sixth Amendment.
>
> . . . .
>
> First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused. It was these practices ... that English law's assertion of a right to confrontation was meant to prohibit; and that the founding-era rhetoric decried. The Sixth Amendment must be interpreted with this focus in mind.
>
> . . . .
>
> The historical record also supports a second proposition: that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts. Rather, the "right ... to be confronted with the witnesses against him," Amdt. 6, is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding. As the English authorities above reveal, the common law in 1791 conditioned admissibility of an absent witness's examination on unavailability and a prior opportunity to cross-examine. The Sixth Amendment therefore incorporates those limitations. The numerous early state decisions applying the same test confirm that these principles were received as part of the common law in this country.

*Crawford v. Washington,* 541 U.S. at 49, 52–55, 124 S.Ct. at 1363, 1365–66 (citations omitted).

Thus the Supreme Court has replaced the amorphous adequate indicia of reliability in-

quiry of *Ohio v. Roberts, supra,* with a new inquiry, that is, what is a "testimonial" statement. The Court opened the inquiry, stating:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Crawford v. Washington,* 541 U.S. at 68–69, 124 S.Ct. at 1374 (footnote omitted).

In addition, as directly applicable here with respect to statements arising from police interrogations or questioning, the Court stated:

> Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard. Police interrogations bear a striking resemblance to examinations by justices of the peace in England. The statements are not *sworn* testimony, but the absence of oath was not dispositive.
>
> . . . .
>
> That interrogators are police officers rather than magistrates does not change the picture either. Justices of the peace conducting examinations ... were not magistrates as we understand that office today, but had an essentially investigative and prosecutorial function. England did not have a professional police force until the 19th century, so it is not surprising that other government officers performed the investigative functions now associated primarily with the police. The involvement of government officers in the produc-

tion of testimonial evidence presents the same risk, whether the officers are police or justices of the peace.

> In sum, even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class.

*Crawford v. Washington, supra,* 541 U.S. at 50–53, 124 S.Ct. at 1364–65 (citations omitted).

Here, the statement was taken by an investigating officer in a question and answer format appropriate to a child. The statement was "testimonial" within even the narrowest formulation of the Court's definition of that term. We thus conclude that the statement was not admissible at trial. *See People v. Vigil,* 104 P.3d 258, 2004 WL 1352647 (Colo.App. No. 02CA0833, June 17, 2004)(statement made by child victim to police officer, and a separate statement to a physician who was a member of a child protection team and a frequent prosecution witness in child abuse cases, both of whom questioned the child, are testimonial hearsay under *Crawford*); *see also Snowden v. State,* 156 Md.App. 139, 846 A.2d 36 (2004)(out-of-court statements describing sexual abuse made by children during an interview with a social services investigator were "testimonial" within the meaning of *Crawford*); *People v. Sisavath,* 118 Cal.App.4th 1396, 13 Cal. Rptr.3d 753 (5 Dist.2004) (statements of child sex abuse victim to investigating officer and to an interviewer at a facility specially designed to interview children who are suspected victims of child abuse are testimonial within the meaning of *Crawford*).

Therefore, because the juvenile did not have an opportunity to cross-examine the victim, admission of the videotaped statements violated the juvenile's rights under the Confrontation Clause.

■ The People argue that the juvenile waived his confrontation claim by stipulating that the victim was incompetent to testify as a witness. We do not agree. The stipulation merely established the unavailability of the witness, § 13–25–129(1)(b), C.R.S.2003; it was consistent with that stipulation for the juvenile to assert, as he did in the trial court, that the hearsay statement otherwise violated his right of confrontation.

Because the error at issue here is of constitutional dimension and was preserved below, reversal is required unless it was harmless beyond a reasonable doubt. The prosecution bears the burden of showing that the error was harmless beyond a reasonable doubt. If there is a reasonable probability that the defendant could have been prejudiced by the error, the error cannot be harmless. *Blecha v. People*, 962 P.2d 931 (Colo.1998).

The videotaped interview of the victim was the central and most persuasive piece of evidence in the prosecution's case. The prosecutor relied upon it in closing argument. Based on our review of the record, we are unable to say that admission of the videotaped statements was harmless beyond a reasonable doubt. Accordingly, we conclude the delinquency adjudication must be reversed.

We do not address the admissibility under *Crawford v. Washington, supra,* of the victim's statements to his mother and grandmother because the juvenile has not here asserted that these statements were "testimonial." However, upon remand, the trial court should determine whether these statements can be admitted without violating the juvenile's confrontation rights. *See People v. Vigil, supra; People v. Compan,* 100 P.3d 533, 2004 WL 1123526 (Colo.App. No. 02CA1469, May 20, 2004)(admissibility of nontestimonial hearsay to be determined under *People v. Dement,* 661 P.2d 675 (Colo. 1983)).

In his original brief, the juvenile argued that the trial court erred by failing to make a finding that the victim was unavailable due to incompetence. We reject this argument because, as set forth above, the juvenile stipulated to the victim's incompetence.

The judgment is reversed, and the case is remanded for a new trial consistent with the views expressed in this opinion.

Judge VOGT and Judge LOEB concur.