The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Brett Wayne SHARP, Defendant–Appellant.

No. 04CA0619.

Colorado Court of Appeals, Div. V.

Nov. 3, 2005.

Rehearing Denied Dec. 22, 2005.*

Certiorari Granted Oct. 10, 2006.**

* Graham, J., would GRANT petition of Plaintiff-Appellee.

** Justice EID does not participate.

Chief Justice MULLARKEY would grant as to the following issue:

When a judgment of conviction is affirmed on direct appeal but the case is remanded for resentencing, should the conviction be considered final for retroactivity purposes, thus limiting a second direct appeal to claims arising from the resentencing.

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Thomas K. Carberry, Denver, Colorado, for Defendant–Appellant.

ROMÁN, J.

Defendant, Brett Wayne Sharp, appeals the judgment of conviction entered upon jury verdicts finding him guilty of one count of sexual assault on a child (pattern of abuse), four counts of sexual assault on a child (position of trust), four counts of aggravated incest, four counts of second degree sexual assault, and sentence enhancers of bodily injury to the victim and use of threats, intimidation, or force. We affirm.

Defendant was convicted of sexually assaulting his five-year-old daughter, C. The child's mother testified that when C returned from a visit with her father, she reported that her father had touched her inappropriately.

The mother called the police, and C was taken to a children's advocacy center, where she underwent a videotaped interview by a private forensic interviewer in which she was kept away from police and prosecutors and never informed of their involvement.

At trial, the prosecution attempted to have C testify, but after it became apparent she was too traumatized to testify, the trial court found her unavailable as a witness. At that time, portions of the videotaped interview were shown to the jury. The jury found defendant guilty on the above counts, and defendant was sentenced to the Department of Corrections for fifty years.

In 2002, another division of this court affirmed the convictions but vacated the sentence, determining that the trial court had erred in concluding that the former § 16–11–309 (now codified with amendments at § 18–1.3–406, C.R.S.2005) required it to impose consecutive sentences for each conviction of sexual assault on a child. *People v. Sharp,* (Colo.App. No. 00CA0772, Jan. 10, 2002) (not published pursuant to C.A.R. 35(f)). The Colorado Supreme Court denied defendant's petition for certiorari on August 19, 2002, and a mandate was issued on August 26, 2002.

At resentencing, the trial court re-imposed defendant's fifty-year sentence. Three days later, the United States Supreme Court issued its opinion in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Defendant filed a notice of appeal on March 30, 2004.

## I. Timeliness of Appeal and Applicability of *Crawford*

■ Defendant contends *Crawford* applies retroactively to his case because *Crawford* was decided three days after his resentencing and thus during his forty-five-day direct appeal period, at a time when his conviction was not yet final. We agree.

In *Crawford, supra,* the Supreme Court announced a framework for evaluating Confrontation Clause claims so that it now differs substantially from the analysis applicable at the time of defendant's trial. Because *Crawford* announced a new rule for the conduct of criminal prosecutions, it must be applied retroactively to all cases, state or federal, pending on direct review or not yet final when *Crawford* was decided. *See Griffith v. Kentucky,* 479 U.S. 314, 322, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987) ("failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication"); *People v. Compan,* 100 P.3d 533, 537 (Colo.App.2004) ("Although not decided until after defendant was tried and sentenced, *Crawford* nevertheless applies to defendant's direct appeal."), *aff'd,* 121 P.3d 876 (Colo. 2005).

In this case, we must decide when a defendant's case is "final" for purposes of retroactive application of *Crawford.* In other words, is a defendant's case final when he has exhausted all appeals regarding only his convictions, or not until he has exhausted all appeals regarding his convictions *and* sentence?

The *Griffith* Court defined the term "final" as "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith, supra,* 479 U.S. at 321 n. 6, 107 S.Ct. at 712.

Based on *Griffith,* courts in some jurisdictions have concluded that a judgment of conviction is "final" for retroactivity purposes once the state appellate courts have affirmed the defendant's convictions, regardless of a remand for resentencing. *See Richardson v. Gramley,* 998 F.2d 463 (7th Cir.1993)(defendant's conviction final before *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), decided, even though defendant's resentencing remained); *United States v. Baron,* 721 F.Supp. 259 (D.Hawai'i 1989) (defendant's conviction final, for purpose of determining retroactive application of *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), where, although the appellate court had remanded for resentencing, it had affirmed defendant's conviction, and the United States Supreme Court had denied certiorari); *People v. Holman,* 132 Ill.2d 128, 138 Ill.Dec. 155, 547 N.E.2d 124 (1989)(for purpose of determining whether *Batson* applied, defendant's conviction was final, despite appellate court's remand for resentencing, because appellate court had decided his direct appeal and the United States Supreme Court had denied his petition for certiorari).

Other courts, however, have interpreted *Griffith* to mean "a judgment cannot be considered final so long as a defendant may appeal either the conviction or sentence." *United States v. Colvin,* 204 F.3d 1221, 1224 (9th Cir.2000); *see also Cochran v. Herring,* 43 F.3d 1404, 1409 n. 7, *modified,* 61 F.3d 20 (11th Cir.1995) (*Batson* applied retroactively because defendant's sentence was still being reviewed when *Batson* was decided).

We conclude that the rationale of the latter line of cases should be applied here because it accords with the law of this state regarding when a conviction becomes final. Citing the definition of "judgment of conviction" under Crim. P. 32(c), defendant argues that his conviction is not final until he is sentenced and the time to appeal has expired. In our view, defendant's interpretation of Crim. P. 32(c) is correct.

The meaning of "conviction" may vary depending upon the statute in which it is used and the issue in the particular case. *People v. Hampton,* 876 P.2d 1236 (Colo.1994). The key is the legislative intent behind the use of that word in the statute in question. *People v. Roberts,* 865 P.2d 938 (Colo.App.1993). Under Crim. P. 32(c), a "judgment of conviction" consists of "a recital of the plea, the verdict of findings, *the sentence,* the finding of the amount of presentence confinement, and costs, if any are assessed against the defendant" (emphasis added). Thus, in Colorado, a "judgment of conviction" is final only after a sentence is passed. *See Hellman v. Rhodes,* 741 P.2d 1258 (Colo.1987); *People v. Fisher,* 189 Colo. 297, 539 P.2d 1258 (1975).

This result is consistent with 28 U.S.C. § 1257(a), which governs Supreme Court jurisdiction of state court judgments. Section 1257(a) authorizes the Court to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had ... where any title, right, privilege, or immunity is specially set up or claimed under the Constitution." For review of criminal prosecutions under § 1257(a), "finality generally is defined by a judgment of conviction and the imposition of a sentence." *Florida v. Thomas,* 532 U.S. 774, 777, 121 S.Ct. 1905, 1908, 150 L.Ed.2d 1 (2001); *see also Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment.... To create finality it [is] necessary that [defendant's] conviction should be followed by a sentence ...." (citations omitted)).

Accordingly, we conclude that, for the purpose of retroactive application of a new rule of law such as *Crawford,* in Colorado a judgment of conviction cannot be considered final so long as a defendant may directly appeal the conviction or sentence.

We believe such a bright-line rule will help avoid litigation over the finality question as well as allow defendants to exhaust their appeals on direct review before bringing collateral attacks. Under this rule, "a defendant will have no doubt when the judgment becomes final and will be able to coordinate his direct and collateral appeals accordingly." *Colvin, supra,* 204 F.3d at 1226.

Here, *Crawford* was decided three days after defendant's resentencing, and during

defendant's forty-five-day direct appeal period. Because defendant timely filed his notice of appeal within that period, he is entitled to seek relief under *Crawford*, as *Crawford* was announced before his conviction became final. The fact defendant now appeals trial issues rather than sentencing issues has no bearing on the appeal's timeliness in the circumstances of this case. *See Hellman, supra,* 741 P.2d at 1260 ("The fact that [defendant] appeals trial issues rather than sentencing issues has no bearing on the timeliness of filing his appeal.").

Accordingly, we conclude defendant may raise his confrontation issue on appeal. We thus proceed to the merits of his contention.

## II. Constitutional Confrontation Rights

■ At the outset, we note defendant raised no Confrontation Clause claim at trial. Where a defendant fails to object at trial, the plain error standard of review applies to allegations of constitutional error. *See People v. Miller,* 113 P.3d 743 (Colo.2005). Plain error is error that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Miller, supra,* 113 P.3d at 750; *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003). Applying a plain error standard of review in this case, we find no plain error.

Defendant contends that the admission of C's videotaped interview at trial violated his constitutional right to confront witnesses and requires reversal of his conviction. We disagree.

### A. Federal Confrontation Analysis under *Crawford*

The United States and Colorado Constitutions guarantee that persons accused of crimes shall have the right to confront the witnesses against them. *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16.

■ In *Crawford, supra,* the Supreme Court held that a nontestifying witness's out-of-court testimonial statement, regardless of its reliability, may be admitted against an accused only if the witness is unavailable and the accused had an opportunity to cross-examine the witness when the statement was made. In so holding, the Court departed from its prior confrontation analysis, which had permitted use of an unavailable witness's statement if it bore sufficient indicia of reliability. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

While the rule announced in *Crawford* appears straightforward, a division of this court has observed that "[c]ourts will encounter difficulty, for a time at least, with the threshold determination of whether the out-of-court statements are 'testimonial.'" *People v. Compan, supra,* 100 P.3d at 537. It is to that determination we now turn.

### 1. Testimonial vs. Nontestimonial Hearsay

According to the *Crawford* majority, the Confrontation Clause was particularly directed toward prohibiting the use of ex parte examinations as evidence against the accused. *Crawford, supra,* 541 U.S. at 51, 124 S.Ct. at 1363. The Clause applies to "witnesses" against the accused—in other words, those who "bear testimony." *Crawford, supra,* 541 U.S. at 51, 124 S.Ct. at 1364 (quoting 1 N. Webster, *An American Dictionary of the English Language* (1828)).

"Testimony," in turn, is typically a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364 (quoting Webster, *supra*). The *Crawford* majority declined to give a more precise definition of "testimony." *See Crawford, supra,* 541 U.S. at 68, 124 S.Ct. at 1374 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'").

The inquiry is whether, under the circumstances, the declarant intended to bear testimony against the accused. The determinative factor in this inquiry is the declarant's awareness or expectation that his or her statement may later be used at trial. *See United States v. Summers,* 414 F.3d 1287, 1302 (10th Cir.2005)("[A] statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime."); *United States v. Saget,* 377 F.3d 223, 228 (2d

Cir.2004) ("*Crawford* at least suggests that the determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial."); *State v. Hembertt*, 269 Neb. 840, 850, 696 N.W.2d 473, 482 (2005) ("[D]eterminative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial."); *State v. Davis*, 364 S.C. 364, 400, 613 S.E.2d 760, 779 (S.C.Ct.App.2005) (whether "a reasonable speaker in [declarant's] position would believe the statements made would be available for use at a later trial").

■ Applying *Crawford* to child testimony, another division of this court concluded that the key to determining whether a statement is testimonial is whether an "objective person in the child's position" would believe his or her statement was intended for use at a later proceeding that would lead to punishment of the defendant. *People v. Vigil*, 104 P.3d 258, 263 (Colo.App.2004) (*cert. granted* Dec. 20, 2004, 2004 WL 2926003).

Other courts have reached the same result in cases involving child testimony. *See State v. Krasky*, 696 N.W.2d 816 (Minn.Ct.App. 2005) (*review granted* Aug. 16, 2005) (Although the examination was arranged by a detective and a child-protection worker, there was no indication that the child thought her statements might be used in a later trial or that the circumstances would lead a reasonable child of her age to have that expectation.); *State v. Brigman*, 615 S.E.2d 21, 25 (N.C.Ct.App.2005) (The court distinguished *Vigil* and concluded that "[The five-year-old J.B.] was less likely to understand the potential for his statements to be used prosecutorially than the child in *Vigil*. Also unlike the child in *Vigil*, J.B. did not make any statements indicating that he understood the consequences of his statements or how they might be used to put defendant in jail."); *see also People v. Geno*, 261 Mich.App. 624, 683 N.W.2d 687 (2004) (The child's response to the executive director of a children's assessment center, who was not a government employee, was not testimonial.).

We are persuaded that the test in determining whether the child's statement is testimonial depends on whether an objective person in the child's position would believe her statements would lead to punishment of defendant. *See Vigil, supra.*

Factors to be considered in determining whether a child declarant would reasonably believe his or her statements could be used by the prosecution at trial include: (1) the declarant's age; (2) the declarant's awareness of government involvement; and (3) the declarant's awareness that the defendant faces the possibility of criminal punishment. *See Summers, supra; Vigil, supra; Hembertt, supra; Brigman, supra.*

Thus, in *Vigil, supra*, 104 P.3d at 262–63, a videotaped statement given by a seven-year-old victim of sexual assault to a police officer was deemed testimonial because an objective person in the child's position would have known that his or her statement would be available for use at a trial. There, the interviewer told the child she was a police officer, and when the officer asked the child what should happen to the defendant, the child replied that the defendant should "go to jail." *Vigil, supra*, 104 P.3d at 262. The officer also told the child he needed to talk to a "friend" of hers who worked for the district attorney and who was going to try to put the defendant "in jail for a long time." *Vigil, supra*, 104 P.3d at 263.

Because the seven-year-old declarant in *Vigil* was aware that the government was involved and that the defendant faced the possibility of criminal punishment, that division held that a reasonable person in the child's position would know that his or her statement would be available for use by the prosecution at a later trial. *See also People in Interest of R.A.S.*, 111 P.3d 487 (Colo.App. 2004) (statement of alleged four-year-old sex assault victim testimonial because victim made statement to investigating police officer).

Here, unlike *Vigil*, a private forensic interviewer questioned five-year-old C at a children's advocacy center outside the presence of police and district attorneys, using casual, open-ended questions. Moreover, C did not make any statement indicating that she un-

derstood the consequences of her statements or how they might be used to put defendant in jail. In short, there is no indication in the record that C was aware of the reason for her interview.

> Interviewer: My job is talking to kids. I talk to kids all the time . . . . Can you tell me why you came to talk to me?
>
> C: (Shrugs shoulders).
>
> Interviewer: What did your mommy tell you about coming to talk to me?
>
> C: She didn't tell me anything.

Nor does anything in the record suggest that C was asked what should happen to defendant.

Under these facts, an objective person in the child's position would not believe her statements would lead to punishment of defendant.

Therefore, we conclude the child's videotaped statement to the private forensic interviewer was not testimonial.

## B. Analysis of Nontestimonial Hearsay

■ Having found C's videotaped statement to be nontestimonial, we continue to determine admissibility under the two-part test set forth in *Ohio v. Roberts, supra*, and *People v. Dement*, 661 P.2d 675 (Colo.1983). *See Compan v. People*, 121 P.3d 876 (Colo. 2005).

We do not reach the *Roberts–Dement* test, however, because defendant did not raise a Confrontation Clause challenge at trial under *Roberts–Dement*. If defendant had raised such an objection, he would have preserved his right to challenge C's nontestimonial hearsay on appeal. *See People v. Melendez*, 102 P.3d 315, 322 (Colo.2004).

Instead, when the trial court asked defendant for his position regarding introduction of C's videotaped statements, defendant responded, "I won't object to the tape being introduced by the police officer. I want the jury to see that tape because I have seen the tape. There's something in that tape that would have a great bearing on the outcome of this case." Having affirmatively requested that the jury see C's videotaped testimony, defendant waived any objection under the *Roberts–Dement* test, and therefore, his con-

frontation right under the state constitution, regarding C's nontestimonial statement.

Accordingly, we conclude defendant's confrontation rights under the federal and state constitutions were not violated by introduction of C's videotaped statement at trial.

### III. Jurisdiction and Right to Trial by Jury

■ Defendant also contends the trial court lacked jurisdiction and violated his right to trial before a jury drawn from the district where the crimes occurred because the information alleged the crimes occurred in Arapahoe County, whereas evidence showed a majority of the crimes occurred in the City and County of Denver. We disagree.

In Colorado, a person is subject to prosecution in any Colorado district court if he commits an offense either wholly or partly within the state. *See* § 18–1–201, C.R.S. 2005; *People v. Brown*, 70 P.3d 489 (Colo. App.2002).

Moreover, an information is sufficient if it can be understood from it that "the offense was committed within the jurisdiction of the court or is triable therein." Section 16–5–202(1)(c), C.R.S.2005; *see People v. Williams*, 984 P.2d 56, 60 (Colo.1999). This requirement serves two vital interests of constitutional dimension: (1) it provides the defendant with notice of the offense charged, as well as the factual circumstances surrounding the offense, so that the defendant can adequately prepare a defense; and (2) it protects the defendant from further prosecution for the same offense. *Brown, supra*.

Here, the information alleged, and evidence at trial demonstrated, that defendant committed criminal acts in Arapahoe County and the City and County of Denver. Because defendant committed the offenses wholly or partly within the state, he was subject to jurisdiction in any Colorado district court. *See People v. Brown, supra*.

Furthermore, Colorado's criminal venue statute, § 18–1–202(11), C.R.S.2005, provides:

Proof of the county in which the offense occurred or which county is the proper place for trial pursuant to this section shall not constitute an element of any offense and need not be proven by the prosecution at trial unless required by the statute defining the offense. Any challenge to the place of trial pursuant to this section shall be made by motion in writing no later than twenty days after arraignment, except for good cause shown.... Failure to challenge the place of trial as provided in this subsection (11) shall constitute a waiver of any objection to the place of trial.

Thus, defendant could have moved for change of venue within twenty days after his arraignment, but he did not do so.

Because we conclude the trial court had jurisdiction, we further conclude the information was sufficient, despite any factual error regarding venue. It gave defendant notice of factual circumstances surrounding the charges and alleged the crimes occurred within the State of Colorado. *See Brown, supra.*

Accordingly, we conclude that the trial court had jurisdiction and that defendant waived any objection to venue.

Therefore, the judgment is affirmed.

Judge GRAHAM specially concurs.

Judge VOGT dissents.

Judge GRAHAM specially concurring.

While I concur in the result reached in this matter, I disagree with the analysis set forth in part I of the opinion in which the majority determines that the appeal of issues relating to guilt was timely simply because defendant was resentenced. I read *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and *United States v. Burch,* 202 F.3d 1274 (10th Cir.2000), to mean that a judgment of conviction is final when guilt is determined, a sentence is entered, and the time for filing a petition for certiorari has elapsed. That a sentence, once entered, is later vacated and modified by resentencing, in my view, nevertheless affirms the conviction. When the time for filing a petition to review that affirmation of

conviction has run, the judgment of conviction is final. Although the sentence may be altered, the fact remains that a sentence was originally entered. Thus, all the requirements set forth in *Griffith* have been met, even though a sentence may be changed in terms of its duration.

Changing the duration of a sentence previously entered ought not, in my view, open the door to once again directly appeal an issue relating to the judgment of guilt, which has been fully and finally litigated. Accordingly, believing that the judgment of conviction was final long before *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), was decided, I conclude that *Crawford* has no retroactive application here.

Judge VOGT dissenting.

I agree with Judge Román that defendant is entitled to assert a violation of his rights under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), because his conviction was not yet final when *Crawford* was announced. However, unlike the majority, I conclude that admission of C's videotaped interview violated defendant's constitutional right to confront witnesses, and that the violation was not harmless. I therefore respectfully dissent from the majority's affirmance of the judgment.

As the majority points out, the *Crawford* Court did not spell out a comprehensive definition of "testimonial." However, it gave some guidance on the issue by noting various formulations of the "core class" of testimonial statements at which the Confrontation Clause was directed. These include (1) *"ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Crawford, supra,* 541 U.S. at 51–52, 124 S.Ct. at 1364; *see also Compan v. People,* 121 P.3d 876 (Colo.2005).

As summarized by a division of this court, testimonial statements under *Crawford* are generally "(1) solemn or formal statements (not casual or off-hand remarks), (2) made for the purpose of proving or establishing facts in judicial proceedings (not for business or personal purposes), (3) to a government actor or agent (not to someone unassociated with government activity)." *People v. Compan,* 100 P.3d 533, 537 (Colo.App.2004), *aff'd,* 121 P.3d 876 (Colo.2005).

Here, a police detective arranged for the child to be taken to a children's advocacy center to be interviewed by a forensic interviewer. Although the majority states that the interview was conducted outside the presence of police and prosecutors, the detective testified that she observed the interview on a video monitor in the next room. The videotape shows that, near the end of the interview, the interviewer asks the child to wait while the interviewer checks to see whether she needs to ask any more questions. The interviewer leaves the room and, when she returns, asks the child where the assaults took place and poses further follow-up questions. The interviewer also asks the child at one point whether she may bring in her "helper" who is in the next room, but the child says she may not.

In these circumstances, I believe the interviewer can fairly be deemed to have been acting as an agent of the government, even though she was not herself a police officer.

Further, although no oath was administered at the outset, the interviewer talked to the child about the need to tell the truth and asked the child questions to determine whether she could tell the truth. *See Thomas v. People,* 803 P.2d 144 (Colo.1990)(purpose of oath was satisfied when children were asked at start of videotaped deposition to explain difference between truth and lie, and were told it was important to tell the truth).

Finally, it is undisputed that the purpose of the interview was to elicit statements that would be used to prove facts at a later criminal trial.

On this record, I believe that the statements made by the child during the interview were clearly testimonial within the meaning of *Crawford.*

The majority of courts in other jurisdictions have held that, when a child makes an accusation of abuse to a governmental agent in an interview, the child's statement is testimonial under *Crawford. See United States v. Bordeaux,* 400 F.3d 548 (8th Cir. 2005)(child statements during forensic interview set up by law enforcement were testimonial); *Bockting v. Bayer,* 399 F.3d 1010, *amended,* 408 F.3d 1127 (9th Cir.2005)(statements in detective's interview with six-year-old were testimonial); *T.P. v. State,* 911 So.2d 1117 (Ala.Crim.App.2004)(child's statements to sheriff's investigator and social worker were testimonial); *People v. Sisavath,* 118 Cal.App.4th 1396, 13 Cal.Rptr.3d 753 (2004)(child's statement to forensic interview specialist was testimonial); *Blanton v. State,* 880 So.2d 798 (Fla.Dist.Ct.App. 2004)(child's audiotape statement to police investigator was conceded by state to be testimonial); *In re T.T.,* 351 Ill.App.3d 976, 287 Ill.Dec. 145, 815 N.E.2d 789 (2004)(child statements to police, state social worker, and examining physician were testimonial); *In re Rolandis G.,* 352 Ill.App.3d 776, 288 Ill.Dec. 58, 817 N.E.2d 183 (2004)(*appeal pending* )(child statements to police officer and child advocacy worker were testimonial); *Purvis v. State,* 829 N.E.2d 572 (Ind.Ct.App. 2005)(child's statement to police officer was testimonial); *State v. Snowden,* 385 Md. 64, 867 A.2d 314 (2005)(child's statements in interview with social worker who investigated sexual abuse cases were testimonial); *State v. Mack,* 337 Or. 586, 101 P.3d 349 (2004)(three-year-old's statements to caseworker during police-directed interview were testimonial). *But see People v. Geno,* 261 Mich.App. 624, 683 N.W.2d 687 (2004)(child's response to interviewer who was not a government employee was not testimonial); *State v. Krasky,* 696 N.W.2d 816 (Minn.Ct.App.2005)(*review granted* Aug. 16, 2005)(holding, over a dissent, that child's

statement to nurse practitioner in interview arranged by police was not testimonial).

I also note that the *Crawford* Court itself suggested that the statements of a child victim to an investigating police officer that were at issue in *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), were testimonial. *See Crawford, supra,* 541 U.S. at 58 n. 8, 124 S.Ct. at 1368.

Consistent with *Crawford* and the decisions set forth above, two divisions of this court have concluded that statements given by child victims to forensic or police interviewers were testimonial hearsay, and that their use at trial violated the defendants' confrontation rights. *See People v. Vigil,* 104 P.3d 258 (Colo.App.2004) *(cert. granted* Dec. 20, 2004, 2004 WL 2926003); *People in Interest of R.A.S.,* 111 P.3d 487 (Colo.App.2004). In my view, those cases correctly apply *Crawford,* and I do not believe that the differences between those cases and this one can support a conclusion that the statement at issue here was not testimonial within the meaning of *Crawford.*

As noted, the fact that the forensic interviewer here was not a police officer, as was the interviewer in *R.A.S.,* does not preclude her from being deemed an agent of the government. In *Vigil,* the People had contended that the statements were nontestimonial because the child would not reasonably have expected her statements to be used prosecutorially. The *Vigil* division responded to the People's contention by pointing out facts indicating that the child knew the defendant would be prosecuted and put in jail. However, the absence of such facts in this case does not, in my view, support the majority's conclusion that C's statements were nontestimonial.

In that regard, I note that, in one of its formulations of "testimonial," the *Crawford* Court focused on the "declarant's" expectation, while in another formulation, the Court referred to circumstances that would lead an "objective witness" reasonably to believe that the statement would be available for use at a later trial. *Crawford, supra,* 541 U.S. at 51–52, 124 S.Ct. at 1364. In my view, the latter test, which considers the circumstances from the perspective of an "objective witness,"

rather than the test analyzing the statement from the perspective of the hearsay declarant, is the more useful formulation in cases involving statements by young children. To require that a very young child subjectively understand—or even, that an objective young child understand—that his or her statement is to be used prosecutorially would in most cases effectively eliminate any confrontation challenge to the child's statements. I do not read *Crawford* as supporting such a conclusion.

Here, the child's videotaped statement was central to the prosecution's case, as evidenced by the prosecutor's emphasis on it in closing argument. Because I thus cannot conclude that admission of the statement was harmless, I would reverse the judgment of conviction and remand for a new trial.