**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Joe E. VIGIL, Defendant–Appellant.**

**No. 02CA0833.**

Colorado Court of Appeals, Div. IV.

June 17, 2004.

Rehearing Denied July 22, 2004.

Certiorari Granted Dec. 20, 2004.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

Ken Salazar, Attorney General, Lauren Edelstein Park, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Joe E. Vigil, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child and on his subsequent adjudication as a habitual sex offender. He also appeals the sentence imposed. We reverse and remand for a new trial.

Defendant was convicted of having sexually assaulted the seven-year-old son of a co-worker in the co-worker's home. The child's father testified at trial that, when he went to check on his son, he pushed open the door to the child's room and saw defendant leaning over the child. Both were partially undressed. Defendant fled. The child, who appeared frightened and confused, told his father that defendant "stuck his winkie in his butt and his butt hurt." He also told his father's friend, who was visiting in the home, that his "butt hurt."

The father called the police. Shortly thereafter, a police officer observed defendant, who matched the description of the suspect, walking on a sidewalk near the scene of the incident. When the officer stopped and got out of his car, defendant put a knife to his throat and, when the officer asked what he was doing, said, "I done bad." He then stabbed himself in the throat and chest. Defendant was transported to a hospital, where he told emergency room personnel that he wanted to die and that he "did a bad thing."

A police officer interviewed the child about the incident, and portions of the videotaped interview were shown to the jury at trial. The child, who had been ruled incompetent, did not testify.

I.

Defendant contends on appeal that admission of the videotaped interview with the child violated his constitutional right to confront witnesses and requires reversal of his conviction. We agree.

A.

The United States and Colorado Constitutions guarantee that persons accused of crimes shall have the right to confront the witnesses against them. *See* U.S. Const. amends. VI ("In all criminal prosecutions the accused shall enjoy the right ... to be confronted with the witnesses against him...."), XIV; Colo. Const. art. II, § 16 ("In criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face....").

In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), announced during the pendency of this appeal, the Supreme Court prescribed a framework for evaluating Confrontation Clause claims that differs significantly from the analysis that was applicable at the time of defendant's trial.

In *Crawford,* the Court held that the petitioner's federal confrontation rights had been violated when the trial court played for the jury a tape-recorded statement to police by a witness whom the petitioner had not had the opportunity to cross-examine and who did not testify at trial. In so ruling, the Court departed from its prior confrontation analysis, which had permitted the use of an unavailable witness's statement if the statement bore sufficient indicia of reliability. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). After reviewing the historical background of the Confrontation Clause and the Court's prior case law, the *Crawford* Court held that a nontestifying witness's out-of-court "testimonial" statement, regardless of its reliability, may be admitted against an accused only if the wit-

ness is unavailable and the accused had an opportunity to cross-examine the witness when the statement was made.

Although the Court "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial,'" *Crawford, supra,* 541 U.S. at ——, 124 S.Ct. at 1374, it gave some guidance on the issue by noting various formulations of the "core class" of testimonial statements at which the Confrontation Clause was directed. These include (1) *"ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford, supra,* 541 U.S. at ——, 124 S.Ct. at 1364.

Observing that the involvement of government officers in the production of testimonial evidence presents a particular risk, the Court noted that "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." Conversely, other types of hearsay, such as an "off-hand, overheard remark" or a "casual remark to an acquaintance," are not the sort of statements at which the Confrontation Clause was directed. *Crawford, supra,* 541 U.S. at ——, 124 S.Ct. at 1364; *see also People v. Compan,* 100 P.3d 533, 2004 WL 1123526 (Colo.App. No. 02CA1469, May 20, 2004)(summarizing *Crawford* testimonial statements as generally being (1) solemn or formal statements, (2) made for the purpose of proving or establishing facts in judicial proceedings, (3) made to a government actor or agent, not to someone unassociated with government activity).

■ We conclude that the videotaped statement given by the child to the police officer in this case was "testimonial" under the *Crawford* formulations of that concept.

In so concluding, we reject the People's argument that the statement could not be considered testimonial because it was not made during the course of police interrogation and because a seven-year-old child would not reasonably expect his statements to be used prosecutorially.

■ "Interrogation," under the *Crawford* Court's analysis, is used in a colloquial rather than a technical or legal sense. Thus, the witness's recorded statement knowingly given in response to structured police questioning in *Crawford* "qualifie[d] under any conceivable definition" of testimonial. *Crawford, supra,* 541 U.S. at —— n. 4, 124 S.Ct. at 1365 n. 4. Further, at least in the case of police interrogations, a statement need not be made under oath to be testimonial. *Crawford, supra,* 541 U.S. at ——, 124 S.Ct. at 1364.

Although the interview in this case was conducted in a relaxed atmosphere, with open-ended, nonleading questions, and although no oath was administered at the outset, it nevertheless amounted to interrogation under *Crawford.* The police officer who conducted the interview had had extensive training in the particular interrogation techniques required for interviewing children. At the outset of the interview, she told the child she was a police officer, and, after ascertaining that the child knew the difference between being truthful and lying, she told him he needed to tell the truth. Thus, the absence of an oath, which in any event is not a requirement under *Crawford* for police interrogations, did not preclude the child's statements from being testimonial. *See also Thomas v. People,* 803 P.2d 144 (Colo.1990)(purpose of oath was satisfied when children were asked at start of videotaped deposition to explain difference between truth and lie and were told it was important to tell the truth).

Nor can the statements be characterized as nontestimonial on the basis that a seven-year-old child would not reasonably expect them to be used prosecutorially. During the interview, the police officer asked the child what should happen to defendant, and the child replied that defendant should go to jail.

The officer then told the child that he would need to talk to "a friend" of hers who worked for the district attorney and who was going to try to put defendant "in jail for a long long time." This discussion, together with the interviewer's emphasis at the outset regarding the need to be truthful, would indicate to an objective person in the child's position that the statements were intended for use at a later proceeding that would lead to punishment of defendant. *See Crawford, supra,* 541 U.S. at ——, 124 S.Ct. at 1364 (including among examples of testimonial statements those that were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial").

Finally, we note that at least two other courts have concluded that, under *Crawford,* similar statements by children who did not testify were inadmissible testimonial hearsay. *See People v. Sisavath,* 118 Cal.App.4th 1396, 13 Cal.Rptr.3d 753 (5 Dist.2004); *Snowden v. State,* 156 Md.App. 139, 846 A.2d 36 (Spec. App.2004); *see also People in Interest of R.A.S.,* —— P.3d ——, 2004 WL 1351383 (Colo.App. No. 03CA1209, June 17, 2004)(child victim's statements to police investigator during forensic interview were testimonial hearsay, and their use at trial violated juvenile's confrontation rights). *But see People v. Geno,* 683 N.W.2d 687, 2004 WL 893947 (Mich.Ct.App. No. 241768, Apr. 27, 2004)(child victim's response to interviewer's question was not testimonial where interviewer was not government employee).

Defendant had no opportunity to cross-examine the child regarding the statements he made to the interviewing officer. Based on the trial court's ruling that the child was incompetent, the child did not testify at trial. Accordingly, introduction of his statements to the interviewer violated defendant's right to confront the witnesses against him.

### B.

■ Having concluded that the admission of the videotaped interview violated defendant's confrontation rights, we next consider whether its admission requires reversal of defendant's conviction. We conclude that it does.

■ Confrontation Clause violations have been considered trial errors and, as such, subject to constitutional harmless error analysis. *See Bernal v. People,* 44 P.3d 184 (Colo.2002); *Blecha v. People,* 962 P.2d 931 (Colo.1998). *Crawford* does not appear to have altered that principle. *See Crawford, supra,* 541 U.S. at —— n. 1, 124 S.Ct. at 1359 n. 1 (expressing no opinion regarding state court of appeals' conclusion that confrontation violation was not harmless).

■ Here, although defendant objected on various grounds to admission of the videotaped interview, he did not argue in the trial court that its admission violated his confrontation rights. However, even if the error is deemed unpreserved, it raises an issue of constitutional dimension. In such circumstances, our supreme court has repeatedly held that reversal is required unless the reviewing court is convinced that the error was harmless beyond a reasonable doubt. *See People v. Harlan,* 8 P.3d 448, 490 (Colo. 2000)(where unpreserved issue is of constitutional dimension, "reversal is required unless this court is convinced beyond a reasonable doubt that the error is harmless beyond a reasonable doubt"); *People v. Davis,* 794 P.2d 159 (Colo.1990); *People v. Rodgers,* 756 P.2d 980 (Colo.1988); *Graham v. People,* 705 P.2d 505 (Colo.1985). "If there is a reasonable possibility that the defendant could have been prejudiced, the error cannot be harmless beyond a reasonable doubt." *People v. Rodgers, supra,* 756 P.2d at 984 (quoting *Leonardo v. People,* 728 P.2d 1252, 1257 (Colo.1986)).

In *Vega v. People,* 893 P.2d 107, 119 (Colo. 1995), the supreme court addressed an unpreserved issue regarding limitation on cross-examination for bias because the issue "carrie[d] Confrontation Clause implications." In regard to the analysis applicable to determining whether such unpreserved error required reversal, the court stated:

> In [*Delaware v.*] *Van Arsdall,* [475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)], the Supreme Court held that:
>
> > the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation

Clause errors, is subject to ... harmless-error analysis. *The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.*

Among the factors that a court should consider are:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

*Vega v. People, supra,* 893 P.2d at 120 (citations omitted); *see Merritt v. People,* 842 P.2d 162, 169 (Colo.1992).

Applying these standards to the facts of this case, we cannot conclude that the erroneous admission of the videotaped interview was harmless beyond a reasonable doubt.

The interview was a significant part of the prosecution's case. Although there was other corroborative evidence, discussed below, the child's statements to the interviewer provided the most detailed account of the incident and afforded the jurors the opportunity to hear what had happened from the child himself. *See People v. Newbrough,* 803 P.2d 155, 161 (Colo.1990)("A videotaped interview of a child victim is undoubtedly more powerful, and thus potentially more prejudicial, than testimony of a witness about what the child said.").

The prosecutor relied extensively on the child's videotaped interview in closing argument, citing the child's statements as proof that sexual contact, a necessary element of the charged offense, had occurred. *Cf. People v. Harris,* 43 P.3d 221 (Colo.2002)(finding confrontation violation harmless where prosecutor never referred to hearsay statements in opening or closing, content of statements was unconnected to and attenuated from central issue of whether defendant committed sexual assault, corroborating evidence was persuasive, and impact of inadmissible statements on jury was necessarily insignificant);

*Blecha v. People, supra* (fact that prosecutor never mentioned inadmissible hearsay testimony in opening or closing suggested that testimony was of minimal importance to prosecution's case and supported conclusion that its admission was harmless).

As previously noted, defendant had no opportunity to cross-examine the child.

In arguing that the admission of the evidence was harmless beyond a reasonable doubt, the People correctly point out that there was other evidence corroborating much of the child's testimony and tending to establish defendant's guilt. Although not an eyewitness to the actual assault, the child's father saw defendant and the child in positions that strongly suggested that an assault had taken place or was about to take place. The child's demeanor after the incident was consistent with that of victims of sexual assault. Immediately after the incident, the child made the remarks set forth above to his father and his father's friend. Defendant's statements after the incident, also set forth above, indicated he knew he had done something wrong. Finally, there was physical evidence suggesting that the child had been assaulted, namely, the doctor's observation that the child had significant redness and bruising around his anus and the presence of sperm on anal swabs taken from the child.

However, testimony by the child's father and the father's friend was impeached on cross-examination by evidence that the father had been drinking heavily at the time of the incident and that the friend, who had also been drinking, did not reference the child's alleged remark in the written statement he had given to the police. With respect to the physical evidence, the examining doctor testified that the redness and bruising he observed could have been caused by other things, and the source of the sperm was not identified. Finally, defendant's statements to the police and medical personnel were not necessarily inconsistent with his theory, argued in closing, that no completed act of sexual assault had occurred.

In sum, although there was unquestionably other corroborating evidence presented, we cannot say that the erroneous admission of

the single most persuasive evidence of defendant's guilt was harmless beyond a reasonable doubt. Accordingly, defendant's conviction must be reversed and the case remanded for a new trial.

In light of our conclusion, we do not reach defendant's other contentions of error regarding the admission of the videotape.

## II.

Although we are reversing defendant's conviction, we address certain of his additional contentions because they involve issues that may arise on retrial.

### A. *Additional Confrontation Issues*

■ Defendant contends that his confrontation rights were also violated by the admission of the child's hearsay statements to his father, the father's friend, and the examining doctor. We conclude that the child's statements to his father and his father's friend were properly admitted and will be admissible on retrial regardless of whether the child testifies. However, the child's statements to the doctor were "testimonial" within the meaning of *Crawford* and therefore may not be admitted on retrial if the child does not testify.

### 1.

The child's statements to his father and his father's friend were made immediately after the incident, when the child was crying and upset. They were not solemn or formal statements and were made to persons unassociated with government activity. *See Crawford, supra; People v. Compan, supra.* They therefore do not fall within the *Crawford* definition of testimonial hearsay.

Although the statements were not testimonial, we must nevertheless consider whether they amounted to a violation of defendant's right of confrontation under our state constitution, using the analysis set forth in *Ohio v. Roberts, supra,* and *People v. Dement,* 661 P.2d 675 (Colo.1983)(applying *Roberts* test to determine whether admission of hearsay violated Colorado Constitution). *See People v. Compan, supra* (Colorado courts should continue to apply *Roberts–Dement* test to determine whether state constitutional right of confrontation was violated by introduction of nontestimonial hearsay).

The child's statements were admissible under that test. It was undisputed that the child was unavailable at trial, and the statements were properly admitted under the excited utterance exception to the hearsay rule, CRE 803(2), a firmly rooted hearsay exception that satisfies the *Roberts–Dement* reliability requirement. *See People v. Martinez,* 18 P.3d 831 (Colo.App.2000); *see also* § 13–25–129, C.R.S.2003 (regarding admissibility of out-of-court statements of child sexual assault victims). Thus, they may again be admitted on retrial even if the child is unavailable to testify.

### 2.

■ We reach a different conclusion as to the child's statements to the doctor who examined him after the incident. The doctor was a member of a child protection team that provides consultations at Denver area hospitals in cases of suspected child abuse. He had previously provided extensive expert testimony in child abuse cases. He was asked to perform a "forensic sexual abuse examination" on the child and spoke with the police officer who accompanied the child before performing the examination. At trial, the doctor not only testified regarding his physical findings but also recounted what the child had told him about the incident.

We conclude that, under the particular circumstances present here, the child's statements to the doctor were testimonial under *Crawford.* The statements were made under circumstances that would lead an objective witness reasonably to believe that they would be used prosecutorially. Although the doctor himself was not a government officer or employee, he was not a person "unassociated with government activity." *People v. Compan, supra,* 100 P.3d at 537. The doctor elicited the statements after consultation with the police, and he necessarily understood that information he obtained would be used in a subsequent prosecution for child abuse.

Thus, on retrial, the doctor may not testify regarding the child's statements to him if the child does not testify at trial. We note, however, that this conclusion does not require the exclusion of testimony by the doctor regarding his observations and physical findings.

B. *Suppression of Defendant's Statements*

■ Defendant contends the trial court erred in refusing to suppress his statements, made after the incident, that he had done something bad. He argues that the statements were improperly obtained without a prior advisement pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the statements were involuntary. We conclude that the trial court properly denied the motion to suppress the statements and that they may again be admitted on retrial.

As to defendant's first contention, the requirement of a *Miranda* advisement applies only if the statements were obtained as a result of custodial interrogation. *See Miranda v. Arizona, supra; People v. Gonzales,* 987 P.2d 239 (Colo.1999); *People v. Baird,* 66 P.3d 183 (Colo.App.2002)(for *Miranda* to be applicable, suspect must be in custody and statement must be product of police interrogation).

■ In determining whether a person has been subjected to custodial interrogation, courts must consider the totality of the circumstances surrounding the encounter. *People v. Rivas,* 13 P.3d 315 (Colo.2000). In *Rivas,* the supreme court described the concept of "interrogation" in this context as follows:

Interrogation has ... not been limited to express questioning but also includes its functional equivalent. It has been characterized as any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect....

*Miranda* also made clear that confessions remain a proper element in law enforcement and that volunteered statements of any kind are not barred by the Fifth Amendment. Interrogation, as conceptualized in *Miranda,* must therefore reflect a measure of compulsion above and beyond that inherent in custody itself. Practices identified as the functional equivalents of interrogation generally employ compelling influences or psychological ploys in tandem with police custody to obtain confessions.

*People v. Rivas, supra,* 13 P.3d at 319 (citations omitted).

Applying these standards here, we agree with the trial court that the statements defendant sought to suppress were not obtained as a result of custodial interrogation.

Defendant made the first statement to a police officer who had observed defendant after hearing a report of the incident, followed defendant in his patrol car, and stopped his car some fifteen feet away from defendant. The officer testified at the suppression hearing that, when he saw defendant retrieve a knife from his jacket and put the knife to his throat, the officer reached for his sidearm. However, he kept the sidearm in the "low ready position," pointed at defendant's feet. The officer asked defendant to drop the knife. Defendant did not do so, whereupon the officer asked, "What are you doing?" At that point, defendant responded, "I done bad."

Upon consideration of the totality of the circumstances surrounding the encounter, we conclude defendant had not been subjected to custodial interrogation when he made the statement. Regardless of whether defendant was or was not in custody at the time, the officer's question when he saw defendant put a knife to his throat did not, in our view, amount to the type of interrogation with which *Miranda* was concerned. *See People v. Rivas, supra.*

■ Defendant made the other challenged statement to medical personnel after he was clearly in custody. His statement was overheard by a nearby police officer, who testified to it at trial. However, defendant's statement at that time was not made in response to any questions, but was spontaneous. In such circumstances, the lack of a *Miranda* advisement did not require sup-

pression of the statement. *See People v. Rivas, supra; People v. Gonzales, supra* (Fifth Amendment and *Miranda* do not prohibit evidentiary use of volunteered, noncompelled statements made by a suspect); *see also People v. Smith,* 173 Colo. 10, 475 P.2d 627 (1970)(officer was under no duty to close his ears to evidence volunteered by defendant).

■ Finally, as to defendant's contention that the statements were involuntary in light of his "vulnerable mental and physical condition," we note that he did not raise this contention at the suppression hearing and that the trial court made no findings regarding the voluntariness of the statements. *See People v. Lucero,* 985 P.2d 87 (Colo.App.1999)(issue not raised at suppression hearing as grounds for suppression is not preserved for appeal). In any event, the record affords no basis for concluding that the statements should have been suppressed as involuntary.

Accordingly, the statements may be admitted on retrial.

## C. *Disqualification of District Attorney*

■ We also reject defendant's contention that the district attorney's office should have been disqualified because it wrongfully obtained his privileged medical records before trial.

The district attorney had, by warrant, obtained defendant's medical records following his suicide attempt in order to find out the results of his blood alcohol test. In response to defendant's motion to disqualify the district attorney, the prosecutor told the court that he had no intention of using the blood alcohol test results or any other information from the medical records. Although the court expressed concern about the breadth of the warrant used to obtain the records, it concluded that, because the records could not be used at trial in a manner that would prejudice defendant, there was no basis for disqualifying the district attorney.

We conclude the trial court properly declined to disqualify the district attorney based on an asserted appearance of impropriety when the chance of such appearance was "merely prospective." *See People v. Palomo,* 31 P.3d 879, 884 (Colo.2001)(mere chance that medical information in personnel file might be offered into evidence at trial did not constitute appearance of impropriety warranting disqualification).

## D. *Jury Instruction on Intoxication*

■ Defendant contends the trial court misled the jurors when it instructed them, over his objection, that "[i]ntoxication of the accused is not a defense to a criminal charge." We agree that, if evidence is introduced on retrial showing that defendant was intoxicated, he is entitled to an instruction correctly stating the relevance of such evidence to the charge against him.

Section 18–1–804(1), C.R.S.2003, states:

Intoxication of the accused is not a defense to a criminal charge ... but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant when it is relevant to negative the existence of a specific intent if such intent is an element of the crime charged.

■ Thus, § 18–1–804(1) "absolves a defendant of liability only for a specific intent offense when the evidence of intoxication negates the existence of the specific intent." *People v. Harlan, supra,* 8 P.3d at 471.

To establish the offense of sexual assault on a child, the prosecution was required to prove, inter alia, that defendant knowingly subjected the child to "sexual contact," which is defined as "knowing touching" of various kinds, if done "for the purposes of sexual arousal, gratification, or abuse." *See §§* 18–3–401(4), 18–3–405(1), C.R.S.2003. In *People v. Moore,* 877 P.2d 840 (Colo.1994), the supreme court construed the then-existing definition of "sexual contact" in § 18–3–401(4) ("knowingly touching ... if [it] can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse") to "encompass a requirement of specific intent that the touching be done for the purposes of sexual arousal, gratification, or abuse. Thus the culpable mental state required for the commission of sexual assault on a child is knowing touching that is specifically intended

to be for the purposes of sexual arousal, gratification, or abuse." *People v. Moore, supra,* 877 P.2d at 847.

Although, as the People point out, the definition of "sexual contact" no longer includes the "can reasonably be construed as" language, we nevertheless conclude that *Moore's* characterization of the culpable mental state for sexual assault on a child remains applicable under the current version of § 18-3-401(4). Under this version, as before, the prosecution must establish that the defendant is acting for the specified purposes. *See also Palmer v. People,* 964 P.2d 524 (Colo.1998) (if kidnapping statute were construed to require purposeful conduct calculated to achieve some ulterior illegal objective, such construction would transform offense to a specific intent crime).

Under these authorities, defendant's intoxication was relevant to his potential criminal liability to the extent it may have precluded his ability to act with the "specific intent that the touching be done for the purposes of sexual arousal, gratification, or abuse." *See People v. Moore, supra,* 877 P.2d at 847. Thus, the instruction simply stating that "intoxication of the accused is not a defense to a criminal charge" may have prevented the jury from considering whether defendant's intoxication precluded him from acting with the culpable mental state required for the charged offense.

On remand, if evidence of defendant's intoxication is again presented and the jury is given an instruction on the effect of that evidence, the instruction should incorporate, not simply the first clause of § 18-1-804(1), but also the principle set forth in the remaining portion of the statute and in *Moore.*

### E. *Right to Jury Trial on Habitual Offender Count*

■ Defendant contends he was entitled under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to a jury trial on the habitual sex offender count. We agree with other divisions of this court that there is no right under *Apprendi* to a jury determination of a defendant's habitual offender status. *See People v. Carrasco,* 85 P.3d 580 (Colo.App.2003); *People v. Johnson,*

74 P.3d 349 (Colo.App.2002); *see also People v. Edwards,* 971 P.2d 1080 (Colo.App.1998). If defendant is again convicted on remand, he is not entitled to a jury determination of his status as a habitual offender.

### F. *Legality of Sentence*

■ Finally, we do not agree with defendant that the sentence imposed upon his adjudication as a habitual sex offender, forty-eight years to life, was an illegal sentence.

Section 18-1.3-1004(1)(c), C.R.S.2003, provides that a district court shall sentence a habitual sex offender "for an indeterminate term of at least three times the upper limit of the presumptive range for the level of offense committed and a maximum of the sex offender's natural life." The upper limit of the presumptive range for defendant's class four felony conviction was eight years. *See* § 18-1.3-401(1)(a)(V)(A), (10), C.R.S.2003.

Divisions of this court have consistently rejected contentions that, notwithstanding the statute's use of the term "at least," the minimum sentence in such cases can be no more than three times the upper limit of the presumptive range. *See People v. Larson,* 97 P.3d 246, 2004 WL 253258 (Colo.App. No. 01CA1052, Feb. 12, 2004); *People v. Mata,* 56 P.3d 1169 (Colo.App.2002); *People v. Becker,* 55 P.3d 246 (Colo.App.2002); *People v. Smith,* 29 P.3d 347 (Colo.App.2001). We agree with the reasoning and the result in those cases. On remand, if defendant is again convicted of sexual assault on a child and adjudicated a habitual sex offender, the trial court may again impose an indeterminate sentence with a minimum in excess of the statutory minimum.

The judgment of conviction is reversed, and the case is remanded for a new trial in accordance with the views set forth here.

Judge ROY and Judge LOEB concur.