Opinion by JUDGE LICHTENSTEIN
¶ 1 In this appeal we construe two statutory provisions governing the sentencing of habitual sex offenders against children: sections 18-3-412(2) and 18-1.3-1004(1)(c), C.R.S.2014. We construe them as requiring a district court to sentence a habitual sex offender against children to an indeterminate prison sentence with a lower term of three times the maximum of the presumptive range, unless the court finds extraordinary aggravating circumstances under section 18-1.3-401, C.R.S.2014, in which case the lower term can be up to six times the maximum of the presumptive range.
¶ 2 A jury found defendant, Ervin Isom, guilty of (among other charges) sexual assault on a child, a class 4 felony with a presumptive sentencing range of two to six years. After the district court adjudicated him a habitual sex offender against children, it sentenced him to forty years to life on that count. Because the district court could not aggravate the lower term of that sentence beyond thirty-six years, we vacate the sentence on that count only and remand for resentencing.
I. Background
¶ 3 In 2003, a jury found defendant guilty of sexual assault on a child, enticement of a child, and contributing to the delinquency of a minor based on evidence that he had given a fourteen-year-old girl alcohol and then sexually assaulted her. The district court adjudicated him a habitual sex offender against children, and imposed consecutive sentences *591 of forty years to life in prison on the sexual assault on a child count, and five years to life in prison on each of the counts of enticement of a child and contributing to the delinquency of a minor. The court later corrected the sentence for contributing to the delinquency of a minor to a determinate sentence of five years in prison.
¶ 4 On direct appeal, a division of this court affirmed the judgment of conviction and sentence. See People v. Isom, 140 P.3d 100 (Colo.App.2005). The only sentencing issue raised (and rejected) in that appeal was whether defendant was entitled to a jury trial on the habitual sex offender against children charge. See id. at 106. The mandate was issued in 2006.
¶ 5 After filing several other postconviction motions that the district court denied, in 2013 defendant filed the Crim. P. 35(a) motion at issue. In it, he claimed that (1) his sentence of forty years to life for sexual assault on a child is illegal; (2) the district court failed to sufficiently explain its reasons for aggravating his sentence on that count; and (3) his indeterminate sentences violate due process.
¶ 6 The district court denied the motion, and this appeal followed.
II. Legality of the Forty-Years-to-Life Sentence
A. Applicable Law and Standard of Review
¶ 7 A court has the power and the duty to correct a criminal sentence that is not authorized by statute. See Lucero v. People, 2012 CO 7, ¶ 20, 272 P.3d 1063. It may do so at any time. See Crim. P. 35(a) ; Lucero, ¶ 20 ; People v. Green, 36 P.3d 125, 126 (Colo.App.2001).
¶ 8 Whether a sentence is authorized by statute presents a question of law that we review de novo. See Lucero, ¶ 20 ; People v. Torrez, 2013 COA 37, ¶ 29, 316 P.3d 25.
B. Analysis
¶ 9 Sections 18-3-412(2) and 18-1.3-1004(1)(c) both govern the felony sentencing of habitual sex offenders against children.
¶ 10 Section 18-3-412(2) requires a district court to impose a prison sentence "of not less than three times the upper limit of the presumptive range for that class felony as set out in section 18-1.3401." (Emphasis added.)
¶ 11 Section 18-1.3-1004(1)(c),[1] part of the Sex Offender Lifetime Supervision Act (SOLSA), provides that if a sex offender is eligible for sentencing as a habitual sex offender against children pursuant to section 18-3-412, the district court shall impose a prison sentence "for an indeterminate term of at least three times the upper limit of the presumptive range for the level of offense committed and a maximum of the sex offender's natural life." (Emphasis added.)
¶ 12 Both sentencing statutes reference the "presumptive range" of the general felony sentencing scheme. §§ 18-1.3-1004(1)(a), (c) (referencing the presumptive range "specified in section 18-1.3401"); § 18-3-412(2) (referencing the presumptive range "as set out in section 18-1.3-401"); see also People v. Jones, 2015 CO 20, ¶ 10, 346 P.3d 44 ("[W]hen a statute is a component part of a more comprehensive scheme, the entire scheme should be understood, whenever possible, to give consistent, harmonious, and sensible effect to all of its parts....").
¶ 13 Section 18-3-412(2) -read in isolation-seems unambiguous. Under that provision, a district court may "not" sentence a habitual sex offender against children to a prison sentence "less than" three times the upper limit of the presumptive range. However, as the People argue, the plain language of the provision places no limits on the maximum sentence that a court may impose.
¶ 14 Similarly, section 18-1.3-1004(1)(c), which governs the sentencing of habitual sex offenders against children under SOLSA, requires an indeterminate sentence with a bottom end, or minimum, of "at least" three times the upper limit of the presumptive range, and a top end, or maximum, of life in *592 prison. The phrase "at least" in section 18-1.3-1004(1)(c) could be deemed unambiguous in the same way as "not less than" in section 18-3412(2), creating only a statutory minimum and no cap for the bottom end of the indeterminate sentence. A division of this court so held in People v. Vigil, 104 P.3d 258, 268 (Colo.App.2004) ( Vigil ), rev'd in part on other grounds, 127 P.3d 916 (Colo.2006).
¶ 15 But in Vensor v. People, 151 P.3d 1274 (Colo.2007), the supreme court determined that the phrase "at least" was ambiguous in a similarly structured sentencing provision in SOLSA- section 18-1.3-1004(1)(a). That subsection requires a district court to sentence a sex offender to prison "for an indeterminate term of at least the minimum of the presumptive range specified in section 18-1.3-401 for the level of offense committed and a maximum of the sex offender's natural life."
¶ 16 The phrase "at least" in section 18-1.3-1004(1)(a), like the phrase "at least" in section 18-1.3-1004(1)(c), could be interpreted as creating only a statutory minimum and no cap for the bottom end of an indeterminate sentence. But in Vensor the court rejected this "cramped reading" of section 18-1.3-1004(1)(a) because it would give sentencing courts discretion to impose indeterminate sentences with extremely long lower terms, effectively collapsing indeterminate sentences into determinate life sentences and eliminating any role for the parole board. See Vensor, 151 P.3d at 1278.
¶ 17 In so ruling, the court cited to, and implicitly overruled, People v. Larson, 97 P.3d 246 (Colo.App.2004), and People v. Smith, 29 P.3d 347 (Colo.App.2001), two cases that had interpreted section 18-1.3-1004(1)(a) as creating a statutory minimum and no cap for the bottom end of an indeterminate sentence. See Vensor, 151 P.3d at 1277. Vensor also cited to Vigil as among those cases which had interpreted the bottom end of an indeterminate sentence under SOLSA as having no cap. Vensor, 151 P.3d at 1277 ; Vigil, 104 P.3d at 268. In so doing, the supreme court may have implicitly disapproved of Vigil 's interpretation of the phrase "at least" in section 18-1.3-1004(1)(c) of SOLSA. Indeed, Vigil 's interpretation of section 18-1.3-1004(1)(c) would also allow sentencing courts to impose indeterminate sentences with extremely long lower terms, effectively collapsing indeterminate sentences into determinate life sentences and eliminating any role for the parole board. To the extent that Vensor did not implicitly overrule Vigil, we need not follow Vigil if our analysis leads us to a different result. See In re Estate of Becker, 32 P.3d 557, 563 (Colo.App.2000) (a division of the Court of Appeals is not bound to follow the precedent established by another division), aff'd sub nom. In re Estate of DeWitt, 54 P.3d 849 (Colo.2002).
¶ 18 Defendant urges us to adopt a different interpretation of section 18-1.3-1004(1)(c) -that the bottom end of the indeterminate sentence for a habitual sex offender against children must be exactly the statutory minimum, which here would be three times the maximum of the presumptive range. Under that interpretation, the phrase "at least" in section 18-1.3-1004(1)(c) simply designates an exact term of years for the bottom end of the indeterminate sentence, in juxtaposition to the upper term of life. However, the court in Vensor also rejected this interpretation of the phrase "at least" in section 18-1.3-1004(1)(a), because it would require all sex offenders who had committed the same class of felony to be sentenced identically, depriving sentencing courts of any discretion whatsoever. See Vensor, 151 P.3d at 1278. That same reasoning applies to section 18-1.3-1004(1)(c). If the General Assembly had intended to require an indeterminate sentence with a bottom end of exactly three times the maximum of the presumptive range, we doubt that it would have included the phrase "at least" in section 18-1.3-1004(1)(c). See In re Marriage of White, 240 P.3d 534, 536 (Colo.App.2010) (In construing a statute, "we ... give meaning to all portions of the statute and avoid an interpretation or construction that would render any language meaningless."); cf. § 18-1.3-801(1.5)(a), (2)(a)(I)(A), C.R.S.2014 (general habitual criminal statute requiring precise sentences of either three times or four times the maximum of the presumptive range).
*593 ¶ 19 The supreme court in Vensor, based on its review of legislative history, ultimately adopted a third interpretation of section 18-1.31004(1)(a): the bottom end of an indeterminate sentence under that provision must be between the minimum and twice the maximum of the presumptive range. In Vensor, the court interpreted the phrase "at least" as creating the minimum possible sentence for the bottom end of the indeterminate sentence, but held that sentencing courts are still constrained by the cap on aggravating sentences under section 18-1.3-401(6). See Vensor, 151 P.3d at 1279 ("[We do not interpret] words limiting the court's discretion at the lower end of the sentencing range to implicitly eliminate all other sentencing constraints."). Because a court may not aggravate a sentence under section 18-1.3-401(6) beyond twice the maximum of the presumptive range, the Vensor court read that sentencing constraint into section 18-1.3-1004(1)(a). See Vensor, 151 P.3d at 1278-80.
¶ 20 Can the supreme court's holding in Vensor be properly applied in this case? We conclude that it can. To be sure, section 18-1.3401(6) only allows for an aggravated range of sentence up to twice the maximum of the presumptive range. So on its face the three times multiplier in sections 18-3-412(2) and 18-1.3-1004(1)(c) takes those statutory provisions entirely outside the range of sentencing permitted by section 18-1.3-401. On the other hand, sections 18-3412(2) and 18-1.3-1004(1)(c) both refer (either explicitly or implicitly) to section 18-1.3-401, and "it would not be unreasonable to understand this statutory language, prescribing the lower term of the indeterminate sentence by express reference to the presumptive sentencing procedure of section 18-1.3-401, as incorporating the other features and limitations of that statutory scheme as well." Vensor, 151 P.3d at 1277. Indeed, "[s]ection 18-1.3-401 is more than a list of presumptive ranges for felony sentencing; it articulates the fundamental mechanism for felony sentencing in this jurisdiction." Id. at 1279.
¶ 21 Like the Vensor court, which found the plain language of section 18-1.3-1004(1)(a) to be ambiguous, we deem the plain language of sections 18-3-412(2) and 18-1.3-1004(1)(c) to be ambiguous, and therefore will consider their legislative history. See id. at 1277 ("If statutory language is susceptible of more than one reasonable interpretation, it is considered ambiguous and subject to construction according to well-accepted aids for determining legislative intent.").
¶ 22 The historical development of sections 18-3-412(2) and 18-1.31004(1)(c) sheds light on their proper interpretation. See Jones, ¶ 10. The original versions of these statutory provisions did not contain the "three times" multiplier. Instead, the original version of section 18-3-412(2) required a sentence of "not less than the upper limit of the presumptive range," and the original version of section 18-1.3-1004(1)(c) required an indeterminate sentence with a lower term of "at least the upper limit of the presumptive range." Ch. 76, sec. 1, § 18-3-412(2), 1982 Colo. Sess. Laws 317; Ch. 303, sec. 1, § 16-13-804(1)(c), 1998 Colo. Sess. Laws 1280.
¶ 23 The legislative history from the original passage of section 183-412(2) in 1982 indicates a legislative intent to require a sentence at the maximum of the presumptive range, unless the sentence is aggravated under section 18-1.3-401, in which case it could be up to twice the maximum of the presumptive range. See Hearing on S.B. 34 before the S. Judiciary Comm., 53rd Gen. Assemb., 2nd Reg. Sess. (Jan. 11, 1982) (statement of primary sponsor of the bill regarding the sentencing provision); Hearing on S.B. 34 before the S. Judiciary Comm., 53rd Gen. Assemb., 2nd Reg. Sess. (Jan. 25, 1982) (discussion among legislators regarding the "not less than" language in the provision, and testimony of both the executive director of the Colorado District Attorneys' Council and a chief deputy district attorney regarding the meaning of the provision); see also Vensor, 151 P.3d at 1279 (the testimony of a bill's sponsor concerning its purpose and anticipated effect can be powerful evidence of legislative intent); People v. Rockwell, 125 P.3d 410, 419 (Colo.2005) (testimony before a legislative committee can provide guidance in illustrating the understanding of legislators regarding the purpose of the legislation).
*594 ¶ 24 The passage of SOLSA in 1998 overlaid indeterminate sentencing onto this preexisting scheme. See Vensor, 151 P.3d at 1279 ("[SOLSA] was not intended to change the sentencing guidelines already in place under Colorado law."); see also Hunsaker v. People, 2015 CO 46, ¶ 24 (same).
¶ 25 The "three times" multiplier was added to sections 18-3-412(2) and 18-1.3-1004(1)(c) in 2000. See Ch. 78, sec. 1, §§ 16-13804(1)(c), 18-3-412(2), 2000 Colo. Sess. Laws 249-50. Although the legislative history from the 2000 amendment is inconclusive, sponsors of the amendment in the General Assembly repeatedly referred to its effect as "tripling" the sentences of habitual sex offenders against children. See Second Reading of H.B. 1239 before the House, 62nd Gen. Assemb., 2nd Reg. Sess. (Feb. 15, 2000) (statement of the bill's sponsor in the House regarding the purpose of the sentencing provision); Hearing on H.B. 1239 before the S. Judiciary Committee, 62nd Gen. Assemb., 2nd Reg. Sess. (Mar. 8, 2000) (statement of the bill's sponsor in the Senate regarding the purpose of the sentencing provision); Second Reading of H.B. 1239 before the Senate, 62nd Gen. Assemb., 2nd Reg. Sess. (Mar. 13, 2000) (same); see also Vensor, 151 P.3d at 1279.
¶ 26 These statements reflect a legislative intent to triple the possible sentence under former versions of sections 18-3-412(2) and 18-1.3-1004(1)(c). The pre-2000 statutory provisions were subject to a felony sentence mechanism that capped the mandatory minimum sentence, upon a finding of extraordinary circumstances under section 18-1.3-401, to twice the maximum of the presumptive range. Thus, the possible mandatory minimum sentence was anywhere from the maximum up to twice the maximum of the presumptive range. Tripling the possible sentence under this sentencing mechanism would result in a mandatory minimum sentence from three to six times the maximum of the presumptive range. That interpretation is directly supported by a statement from Representative Mitchell, a sponsor of the bill, who assured members of the House of Representatives during third reading that the amendment "does nothing to remove the discretion of the sentencing court.... There is still a range for the sentencing judge, it's just a higher range for a more serious offense." See Third Reading of H.B. 1239 before the House, 62nd Gen. Assemb., 2nd Reg. Sess. (Feb. 16, 2000); see also Vensor, 151 P.3d at 1279.
¶ 27 Other portions of the legislative history, however, create ambiguity regarding the General Assembly's intent in adding the "three times" language to sections 18-3-412(2) and 18-1.31004(1)(c). For example, the fiscal impact note prepared by the Legislative Council Staff presumed that the sentences for habitual sex offenders against children would be exactly three times the maximum of the presumptive range. See Revised Fiscal Impact Report, p. 2 (Jan. 31, 2000); see also People v. Winters, 765 P.2d 1010, 1013 (Colo.1988) (discerning legislative intent in part from fiscal impact report from Colorado Legislative Council Staff).
¶ 28 Nevertheless, in light of Vensor and the legislative history, we interpret section 18-1.3-1004(1)(c) as requiring an indeterminate sentence with a bottom end of three times the maximum of the presumptive range, unless the court finds extraordinary aggravating circumstances under section 18-1.3-401(6), in which case the bottom end can be up to six times the maximum of the presumptive range. This interpretation avoids the two other interpretations that Vensor found untenable: first, an interpretation that would give sentencing courts unlimited discretion to impose indeterminate sentences with extremely long lower terms; and second, an interpretation that would deprive sentencing courts of any discretion whatsoever. Instead, like the Vensor court, we interpret sections 18-3-412(2) and 18-1.3-1004(1)(c), in light of the entire felony sentencing scheme, which includes a cap on aggravated range sentences under section 18-1.3-401.
¶ 29 Thus, here, under section 18-1.3-1004(1)(c), the statutory minimum for the bottom end of defendant's indeterminate sentence for this class 4 felony was eighteen years (three times the maximum of the presumptive range). And, if extraordinary aggravating circumstances existed, the court *595 could have imposed a bottom end sentence of no more than thirty-six years. Because the court sentenced defendant to a bottom end of forty years, we conclude that the sentence of forty years to life is an illegal sentence. We therefore vacate the sentence on that count only and remand for resentencing.
III. Reasons Underlying the Forty-Years-to-Life Sentence
¶ 30 Defendant also contends that the district court failed to sufficiently explain its reasons for aggravating his sentence on the sexual assault on a child count. This is a challenge to the propriety of the sentence, which defendant was required to, but failed to, raise on direct appeal. See § 18-1-409(1), (2), C.R.S.2014; People v. Boespflug, 107 P.3d 1118, 1120-21 (Colo.App.2004). Regardless, the claim is moot because we are remanding for resentencing on the sexual assault on a child count. See People v. McAfee, 160 P.3d 277, 283 (Colo.App.2007). Nevertheless, if on remand the court determines that a bottom end sentence in the aggravated range is warranted on that count, it shall state on the record its findings of extraordinary aggravating circumstances. See § 18-1.3-401(7) and (8).
IV. Whether the Indeterminate Sentences Violate Due Process
¶ 31 Defendant further contends that his indeterminate prison sentences violate due process because he was not given fair warning that he would be sentenced under SOLSA. This constitutional claim is properly construed as a claim under Crim. P. 35(c). See People v. Collier, 151 P.3d 668, 670 (Colo.App.2006) ("The substance of a postconviction motion controls whether it is designated as a Crim. P. 35(a) or 35(c) motion.... Motions under Crim. P. 35(c) are the proper postconviction route in which to challenge ... sentences as unconstitutional.").
¶ 32 The claim is time barred because defendant raised it for the first time nearly seven years after the mandate was issued following his direct appeal, and he has not shown justifiable excuse or excusable neglect for the late filing. See § 16-5-402(1), (1.5), (2)(d), C.R.S.2014. The claim is also successive because he could have raised it on direct appeal, but did not do so. See Crim. P. 35(c)(3)(VII).
¶ 33 However, because we are remanding for resentencing on the sexual assault on a child count, we also note that the claim lacks merit. The information put defendant on notice that he was being charged with sexual assault on a child and enticement of a child. As defendant admits, upon a finding of guilt on those counts, SOLSA mandated the imposition of indeterminate sentences on those counts. See § 18-1.3-1003(5)(a)(IV), (VII), C.R.S.2014. Due process did not require the information (or mittimus) to specifically cite SOLSA. See People v. Carey, 198 P.3d 1223, 1231 (Colo.App.2008) (a defendant is presumed to know the applicable statutes).
V. Conclusion
¶ 34 The district court's order denying defendant's Crim. P. 35(a) motion is affirmed in part and reversed in part. Defendant's indeterminate sentence on the enticement of a child count is affirmed. His indeterminate sentence on the sexual assault on a child count is vacated, and the case is remanded for resentencing on that count. In resentencing defendant on the sexual assault on a child count, the district court shall impose an indeterminate prison sentence of eighteen years to life, unless the court finds extraordinary aggravating circumstances under section 18-1.3-401, in which case the bottom end of the sentence may be between eighteen years and thirty-six years. Again, if the court determines that a bottom end sentence in the aggravated range is warranted, it shall state on the record its reasons for imposing the sentence.
Fox and Vogt* , JJ., concur

This statute was relocated from section 16-13-804 to section 181.3-1004 in 2002. See Ch. 318, sec. 2, § 18-1.3-1004(1)(c), 2002 Colo. Sess. Laws 1435-36.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2014.